LITTLE ROCK STREET IMPROVEMENT DISTRICT NO. 508 *v.*
TAYLOR.

Opinion delivered July 6, 1931.

*Horace Chamberlin,* for appellants.
*Nat R. Hughes* and *Sam Rorex,* for appellee.

SMITH, J. On February 28, 1931, appellants filed an intervention in the proceedings in the Pulaski Chancery Court wherein the affairs of the American Exchange Trust Company were being wound up as an insolvent bank.

The intervention contained allegations to the following effect. Street Improvement District No. 508 was organized under the provisions of c. 89, Crawford & Moses' Digest, and amendments thereto, for the purpose of paving certain streets in the city of Little Rock. Three surety companies, which are parties to the intervention, are engaged in the corporate surety business in this State.

The American Exchange Trust Company was a banking corporation, organized under the laws of this State, but was insolvent on November 15, 1930, at which time it was taken over by the State Bank Department for liquidation purposes. Notwithstanding its insolvency, the bank never had less than $375,000 in money on hand at any time after incurring the obligation therein stated since March 24, 1930. On the date last mentioned Improvement District No. 508 appointed the American Ex-

change Trust Company, hereinafter referred to as the bank, as its treasurer, and the bank accepted the appointment, pursuant to §§ 5702-5707, Crawford & Moses' Digest, and the district thereupon "placed with its said treasurer and in its trust department several hundred thousand dollars of its funds, accompanied by written instructions prepared by the treasurer but signed by the district, as follows: 'Funds are to be drawn out only in payment of necessary expenses and on engineer's monthly estimates.'" It was alleged that the bank charged, and the district agreed to pay, the fee allowed by § 5705, Crawford & Moses' Digest, as compensation for services as such treasurer and for disbursing funds by paying outstanding bonds and interest coupons. It was alleged that the relation thus created between the district and the bank was not one of creditor and debtor, but a fiduciary one authorized by the statute referred to.

That, to secure the faithful accounting and proper payment of such funds, the bank, at the date of its appointment as such treasurer, executed three separate bonds, aggregating $500,000, with the surety companies— parties interveners, as sureties. That on the date the bank closed it had on hand as treasurer of the district, "as a remainder of such funds so placed with it on March 24, 1930, the sum of $110,769.33," which the Bank Commissioner refused, on demand, to pay over, but did allow the same as a common claim.

It was further alleged that, upon the demand of the district, the surety companies paid it the full amount of the deposit on December 20, 1930, and took an assignment of the demand to themselves and thereby became subrogated to all the rights of the district.

It was prayed that the Bank Commissioner be ordered to pay the full amount of the demand as a preferred claim. A demurrer to the intervention was sustained, and it was dismissed as being without equity, and the interveners have appealed.

This case is sufficiently similar to the recent case of *Taylor* v. *Street Imp. Dist. No. 343,* 183 Ark. 524, 37 S. W.

(2d) 84, to be controlled by the principles there announced. In that case it was recited, in the agreed statement of facts upon which the case was tried, that certain improvement districts in the city of Little Rock had turned certain moneys over to the American Exchange Trust Company as treasurer of the districts, and that the bank had on hand at all times thereafter until it closed its doors a sum of money in excess of these deposits. It was agreed that the money had been deposited in the bank for the purpose of paying bonds and interest thereon outstanding against the districts. That each of the districts had executed a pledge, which had been duly recorded, of all assessed benefits and other resources of the districts, for the payment of the bonds and the interest thereon. This pledge required the boards of commissioners of the districts to draw vouchers against the deposits to pay bonds and interest when due, and authorized the bank, if such warrants were not drawn, to apply the funds on hand for such purposes and to charge the same to the districts, and that this had been done in several instances.

The pledges constituted the bank as the trustee and treasurer of the districts, and funds of the districts were deposited in the bank in that capacity, and in no instance were funds used by the districts other than for the purposes for which they had been raised.

Upon the trial of that case in the court below, it was held that the claims of the districts constituted trust funds and special deposits and entitled the districts to preference and to payment in full. In reversing the decree so holding it was pointed out that § 1 of act 107 of the Acts of 1927 had classified creditors of a bank of which the Bank Commissioner had taken charge as "secured creditors," "prior creditors," or "general creditors." We there quoted from that act as follows: "(4) the owner of a special deposit expressly made as such in said bank, evidenced by a writing signed by said bank at the time thereof, and which it was not per-

mitted to use in the course of its regular business, (5), the beneficiary of an express trust, as distinguished from a constructive trust, a resulting trust, or a trust *ex maleficio* of which the said bank was the trustee, and which was evidenced by a writing signed by said bank at the time thereof. * * * All creditors not in this section hereinabove classed as secured creditors of said bank, including the State of Arkansas and any of its subdivisions, shall be general creditors thereof.''

Upon the authority of this statute, it was held that the claims of the districts were not preferred, but were common claims, and should be classed as such. In so holding we said that a special deposit, under the law, must be expressly made as such in the bank and evidenced by a writing signed by the bank at the time it is made, and which the bank was not permitted to use in the course of its regular business, and that the Legislature appeared to have restricted the definition of special deposits in providing for their preferential payment to such only as are made expressly and evidenced by a writing signed by the bank at the time of the making thereof, showing such deposits as not permitted to be used by the bank in the regular course of its business.

It was not alleged in that case, nor is it in this, that there was any written agreement between the bank and the district expressly making the deposits of the district special deposits, which denied to the bank the right to use the money in the course of its regular business. It is insisted, however, in the instant case that the law under which the deposit was made imposed this condition. Section 5706, Crawford & Moses' Digest, is cited to support this condition. This section reads as follows: "It shall be unlawful for the collector or treasurer of the improvement district, or of any other subordinate officer appointed by the board, to loan or use, or to be interested in the loan or use, of any funds raised by the improvement district."

We do not think, however, that this was the purpose or the effect of the statute. It was not made unlawful for an improvement district to make a general deposit in a bank. Indeed, act 182 of the 1927 session of the General Assembly, approved March 22, 1927, expressly gave the commissioners and treasurers of all improvement districts the right to deposit the funds of the districts in any bank, requiring a bond conditioned for the apt, full and complete payment of all funds so deposited, together with the interest thereon. It affirmatively appears, from the allegations of the intervention, that the commissioners of District 508 had proceeded under the authority of this act 182 and had taken bonds from the intervening surety companies to indemnify the district against loss on account of such deposits.

It may be conceded, as learned counsel for appellants contend, that, by subrogation, the surety companies had succeeded to all of the rights which the district possessed in this deposit; but they have no greater rights than the district had. The allegation of the intervention that the district's funds were placed in the bank, read in connection with all the other allegations of the intervention, mean nothing more than that the funds were deposited in the bank, and § 5706, Crawford & Moses' Digest, quoted above, has no application to this deposit. This deposit did not constitute a loan or use of this money, nor make the commissioners of the district interested in the loan or use thereof, and was nothing more than a deposit which the district was authorized to make, and had made, pursuant to the authority of act 182 of the Acts of 1927.

This was, of course, a deposit of trust funds of an improvement district, but so also was the deposit in the case of *Taylor* v. *Street Imp. Dist. No. 343, supra,* but we there said: "The deposit of the trust funds of the improvement districts, taxes collected and benefits assessed, although they were trust funds, so far as the particular officials collecting and depositing them is concerned, and known by the bank to be such, did not become special de-

posits, in the absence of a written agreement by the bank making them such at the time of their deposit, and the deposit was a general one under the law, the owner or creditor standing upon the same footing as the other general creditors, entitled to no preference or priority of payment. (Citing numerous cases)."

We think, under the allegations of the intervention, that there was no such agreement, as is required by the act of 1927, to constitute the improvement district a secured or prior creditor, and its rights are those only of a general creditor, and its claim was therefore properly allowed as a common claim.

The decree of the court below to this effect must therefore be affirmed, and it is so ordered.